## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MAURICE LEE (#B-65946), | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 12 C 4555 |
| v. | ) |
| | ) Judge Charles R. Norgle, Sr. |
| DR. YU, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Maurice Lee (hereinafter, "Lee" or Plaintiff"), an inmate at Shawnee Correctional Center, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Lee contends the Defendant, Dr. Yu, a physician at the Cook County Jail, (hereinafter, "Defendant Yu") violated his constitutional rights by subjecting him to deliberate indifference to a serious medical condition. This matter is before the Court for ruling on Defendant Yu's motion for summary judgment [Doc. #53]. For the reasons stated in this order, the motion for summary judgment is granted.

### I.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine

issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

**Local Rule 56.1 (N.D. Ill.)**

Defendant Yu filed statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with his motion for summary judgment, Defendant Yu included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [Doc. #54], as required by Local Rule 56.2. That notice clearly explained the requirements of the Local Rules and warned Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have ... repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, Plaintiff's response to Defendant's statements of fact is largely not in compliance with the rule. Initially, the Court notes that of Defendant Yu's thirty statements of uncontested fact, Plaintiff only contests statements 2, 4, 5, 8, 13, 14, 15, 16,

3

24, 25, and 29. Of those eleven statements, Plaintiff only cites to the record for statements 4 and 5. Defendant Yu's statements 4 and 5 are regarding Plaintiff's deposition testimony as to the fact that Plaintiff saw Defendant Yu twice while at the Cook County Jail, and that the first time was at the end of February of 2012. The document Plaintiff uses to attempt to refute those facts is Plaintiff's Exhibit J, Plaintiff's consent to treatment and screening, signed and dated February 22, 2102. The document does not properly contest Defendant Yu's statements 4 and 5. Consequently, Plaintiff did not properly contest any of Defendant Yu's statements of fact.

A motion for summary judgment "requires the responding party to come forward with the evidence that it has--it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted). As Plaintiff has failed to do so, Defendants' proposed undisputed facts are deemed admitted. *See Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B).

Plaintiff also filed his own statement of additional facts that is equally flawed. Plaintiff's statements 8, 10-20, 22, 23, 25-32, 33, 35, 37, and 39 are either devoid of reference to the record, have incomplete or incomprehensible citations, have citations to documents not in the record, or are supported by references only to Plaintiff's complaint. If the moving party meets its burden of showing that there are no issues of material fact and that he is entitled to a judgment as a matter of law, the non-moving party must "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted). The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School*

*Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs").

Additionally, to the extent that a purported fact contains a legal conclusion such as Plaintiff's statement of additional fact 24, the Court will not consider it. "Indeed, it is the function of the Court, with or without a motion to strike, to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement." *Prince v. Chi. Public Sch.*, No. 09-CV-2010, 2011 U.S. Dist. LEXIS 95188, 2011 WL 3755650, at *2 (N.D. Ill. Aug. 25, 2011).

Just as Plaintiff's additional statements were not in complete compliance with Fed. R. Civ. P. 56 and L.R. 56.1 (N.D. Ill.), Defendant Yu's response to the Plaintiff's additional statements of fact are also not in compliance. Instead of admitting or denying the statements and citing to the record in support of any denial, Defendant Yu merely "objected" to each statement because it "does not support denial of summary judgment" or for being irrelevant.

A party who wishes to argue that portions of an opposing party's statement of facts contain errors or are inadmissible on evidentiary grounds may file a motion to strike those portions of the statement. *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997). "Pleadings that do not conform with the local rules may be stricken at the discretion of the court." *Id.* at 640 (*citing Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir.

1990)); *Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir. 1985). However, Defendant Yu did not file a motion to strike, nor did he admit or deny the additional statements of fact, or cite to the record in an attempt to contest the statements of fact. Thus, to the extent Plaintiff's statements of additional fact are properly supported by citation to the record, they are uncontested and must be deemed admitted to the extent they are material.

The Court is capable of redacting the statements of fact, disregarding all argumentative pleading, interpretation or analysis of the facts, unfounded assertions of fact found in the statement, and any facts that are not material or otherwise improper. The Court's scrutiny of material statements of facts applies equally to the party seeking summary judgment and the party opposing it. In sum, the Court will consider any of Plaintiff's additional statements of fact to the extent that they are material, adequately supported by the record, and not controverted by evidence in the record.

## II. Facts

Plaintiff was in custody at the Cook County Jail from February 22, 2012, to April 20, 2012, when he was transferred into state custody at Stateville Correctional Center. (Def. Ex. I, Plaintiff's complaint, p. 6, and *see* Def. Statement of Facts, ¶30.) Plaintiff alleges during the intake process at the Cook County Jail on February 22, 2012, he informed medical staff that he had two bullets in his body. (Def. Statement of Facts, ¶1.) Plaintiff also informed staff of the medication he was taking: Naproxen 500 mg, Gabapentin 300 mg, Tramadol or Toradol and Atenol for severe lower back pain and sciatica. *Id.* Plaintiff had also previously been diagnosed, in 2009, with spondylosis, or degeneration of spinal vertebrae. (Pl. Statement of Add'l Facts, ¶21.)

Plaintiff filed suit on June 12, 2012, alleging that Dr. Yu was deliberately indifferent when he did not write the Plaintiff a new prescription for medication, and when he failed to treat him the day before being sent to the Illinois Department of Corrections. (Def. Statement of Facts, ¶2.) Three to four days after being processed at Cook County Jail, he was seen by a female doctor. (Def. Statement of Facts, ¶3.) This doctor gave him an Albuterol inhaler and Naproxen, but did not give him Tramadol because it is labeled as a narcotic in the Cook County Jail. *Id.*

Plaintiff testified that he saw Dr. Yu twice while at the Cook County Department Jail. (Def. Statement of Facts, ¶4.) Plaintiff first saw Dr. Yu on March 22, 2012 in the Division 6 dispensary. (Def. Statement of Facts, ¶7.) At that time, Plaintiff complained of a gunshot wound to his back and severe pain. (*Id.*)

Dr. Yu attempted to call Plaintiff's primary care physician, Dr. Chantal Tinfang, regarding the medications she prescribed for Plaintiff, but the phone number provided was an invalid phone number. (Def. Statement of Facts, ¶8.) Dr. Yu diagnosed Plaintiff with chronic back pain from a gunshot wound to his spine in 2001, referred Plaintiff to neurosurgery, made a referral to primary care, ordered Plaintiff to continue present management and discontinued acetaminophen. (*Id.*) Defendant noted that Plaintiff appeared in no apparent distress, ambulated slowly with a cane, had a well-healed scar to the left lumbar paravertebral, and had limited range of motion secondary to pain. (*Id.* and *see* Pl. Statement of Add'l Facts, ¶9.)

Plaintiff's Medication Administration Records indicate that in February 2012, Plaintiff received Naproxen and Albuterol. (Def. Statement of Facts, ¶9.) In March 2012, Plaintiff

7

received Naproxen, Gabapentin, and acetaminophen until it was discontinued on March 24, 2012. (*Id.*)

Plaintiff testified that the second time he saw Dr. Yu was on April 19, 2012, in the emergency room after he suffered a broken nose in a fight in Division 6. (Def. Statement of Facts, ¶10.) Plaintiff testified that he suffered a seizure after the fight. (Def. Statement of Facts, ¶11.) Plaintiff testified that following his seizure, he was seen by a nurse who tested his blood sugar, and gave his some oranges and a couple of sandwiches. (Def. Statement of Facts, ¶12.) Plaintiff was then transferred to Cermak. (*Id.*)

Plaintiff testified that when he saw Dr. Yu, he told Dr. Yu that he had a seizure and a broken nose. (Def. Statement of Facts, ¶13, and *see* Pl. Statement of Add'l Facts, ¶34.) Plaintiff testified he told Dr. Yu he was on shipment on the morning of April 20, 2012, and that Dr. Yu gave him a piece of paper to give officials at NRC, Stateville and they would take x-rays and set his nose. (*Id* and *see* Pl. Statement of Add'l Facts, ¶38.)

Plaintiff's jail medical records indicate that on April 19, 2012, Dr. Yu ordered Plaintiff a referral to primary care for April 23, 2012, a cold compress to be applied to affected area, and an x-ray of the nasal bone. (Def. Statement of Facts, ¶15.) While at Cook County Department of Corrections, he received Naproxen, Albuterol, and Tylenol. (Def. Statement of Facts, ¶16.)

Plaintiff was aware of the grievance process, and how to appeal a grievance because he has been in custody a few times. (Def. Statement of Facts, ¶18.) The Cook County Jail Detainee Grievance Procedure was available to all inmates in 2012. (Def. Statement of Facts, ¶27.) Inmates are required to file a grievance, and exhaust all administrative remedies prior to filing a lawsuit. Inmates shall file an Inmate Grievance/Response Form within 15 days of the event they

are grieving. (Def. Statement of Facts, ¶28.) The grievance procedure states that inmates must appeal a grievance within 14 days of the date the inmate received the response to exhaust administrative remedies. (Def. Statement of Facts, ¶29.)

Plaintiff filed a grievance on March 2, 2012, stating that he is hypoglycemic and requesting additional food. (Def. Statement of Facts, ¶19.) Plaintiff received a response and appealed the grievance on March 16, 2012. (*Id.*) Plaintiff completed the administrative grievance process for the March 2, 2014, grievance. (Pl. Statement of Add'l Facts, ¶1.) In the appeal portion of the fully exhausted March 2, 2012, grievance, Plaintiff gave notice to Jail officials that he had a bullet lodged near his spine. (Pl. Statement of Add'l Facts, ¶2.)

Plaintiff filed a grievance on March 8, 2012, asking for Tramadol and complaining that he received his Naproxen late. (Def. Statement of Facts, ¶20, and Pl. Statement of Add'l Facts, ¶3.) Jail officials responded to the March 8, 2012, grievance on June 11, 2012, after he was transferred to Stateville Correctional enter on April 20, 2012. (Pl. Statement of Add'l Facts, ¶4.) The response indicated that a doctor treated Plaintiff on March 22, 2012, and the doctor made a referral to a neurosurgeon. (*Id.*) Plaintiff never received the response, and the first time he saw it was when he sat for his deposition in this case. (Pl. Statement of Add'l Facts, ¶5.)

Plaintiff filed a grievance on March 20, 2012, requesting medication. (Def. Statement of Facts, ¶21 and see (Pl. Statement of Add'l Facts, ¶6.) This was the last grievance Plaintiff filed while at Cook County Department of Corrections. (*Id.*) After Plaintiff wrote this grievance he last received medication around March 15-16, 2012. (Def. Statement of Facts, ¶22.) Plaintiff testified that he does not remember the exact date, but after filing out a request, he received Naproxen and Tylenol. (Def. Statement of Facts, ¶23.) Defendants declined to respond to the

March 20, 2012, grievance, stating that Plaintiff had been discharged. (Pl. Statement of Add'l Facts, ¶7.) On transfer to Stateville Plaintiff had no paperwork with which to submit further grievances. (Pl. Statement of Add'l Facts, ¶40.) Plaintiff did, however, send correspondence to the Jail seeking information about the grievances he had already filed, and the procedure for filing an additional grievance regarding Dr. Yu not treating his broken nose prior to his transfer to Stateville, and he received no response. (*Id.*)

Plaintiff testified that he only submitted four grievances. (Def. Statement of Facts, ¶24.) Plaintiff testified that he decided to sue Dr. Yu instead submitting grievances regarding his issues with receiving adequate medical care. (Def. Statement of Facts, ¶25.) The basis of Plaintiff's claims against Dr. Yu stem from the two times that he saw the Defendant. (Def. Statement of Facts, ¶26.)

### III. Discussion

#### A. Failure to Exhaust Administrative Remedies.

Initially, Defendant Yu argues in his motion for summary judgment that Plaintiff failed to exhaust administrative remedies prior to filing suit. The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner*, 531 U.S. 956 (2001). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim

under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001).

An inmate must comply with the rules established by the State [or, in this case, county] with respect to the form and timeliness of grievances. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) (where prisoner failed to avail himself of the administrative grievance process in a timely manner, he was barred from pursuing relief in federal court). Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

To exhaust remedies under § 1997e(a), a prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999) ("[T]he exhaustion requirement in § 1997e(a) is directed at exhausting the prisoner's administrative remedies in the corrections system, and investigation by another agency does not satisfy the requirement of the statute."). The purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is initiated. *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).

Defendant Yu argues in his motion not that Plaintiff failed to submit grievances, but that Plaintiff failed to exhaust his administrative remedies because he did not submit any grievances regarding his medical care *after* he saw Defendant Yu on March 22, 2012. As Plaintiff's grievances all predate his treatment by Defendant Yu, he contends Plaintiff could not have

11

exhausted his administrative remedies as to him. The record contains evidence that Defendant Yu treated Plaintiff on March 22, 2012, and April 19, 2012. Plaintiff admitted in his deposition that his deliberate indifference claim against Defendant Yu relates to the care, or alleged lack of care, Defendant Yu provided Plaintiff on those two dates.

Plaintiff submitted a total of four grievances between February 22, 2012, when he was taken into custody at the Cook County Jail, and April 20, 2012, when he was transferred into state custody at Stateville Correctional Center. The grievances include one submitted on March 2, 2012, regarding Plaintiff's hypoglycemia. Plaintiff appealed this grievance on March 16, 2012, and when he did, he included information regarding the gunshot would he suffered near his spine prior to incarceration. Plaintiff put jail officials on notice that he had a spinal injury, both on intake on February 22, 2012, and through his March 2, 2012, grievance. The record supports a finding that the March 2, 2012, grievance was the only one Plaintiff fully exhausted.

The purpose of the exhaustion requirement is to allow inmates to put the prison or jail on notice of the problem so they can correct it internally, prior to initiating suit. *see Porter,* 534 U.S. at 524-25; *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (noting that exhaustion allows "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record"); *Dole*, 438 at 809. Plaintiff submitted his grievance on March 2, 2012, appealed it on March 16, 2012, raising the medical issue of his gunshot wound, and saw Defendant Yu six days later. Because Plaintiff fully exhausted this grievance, the Court cannot find that Defendant Yu has established that Plaintiff failed to exhaust his administrative remedies prior to filing suit.

Plaintiff also filed a grievance on March 8, 2012, because he was not receiving some of the medications he had been prescribed prior to incarceration. Plaintiff did not appeal this grievance because he did not receive a response prior to transferring to Stateville on April 20, 2012. Plaintiff submitted the third of his four grievances on March 20, 2012. It also related to Plaintiff not receiving medications he had been prescribed. Plaintiff also did not appeal this grievance because he did not receive a response prior to being transferred to state custody. The fourth of Plaintiff's four grievances is not referenced in either Defendant's L.R. 56.1 statement of facts or Plaintiff's additional statements of fact.

The Seventh Circuit has held that transfer to a different correctional facility may make the grievance process unavailable, if the transfer does terminates the administrative process. *Flournoy v. Schomig*, 152 Fed. Appx. 535, 538 (7th Cir. 2005). Many courts hold that the mere fact of a transfer does not affect a prisoner's obligation to exhaust his administrative remedies before filing suit. *See, e.g., Napier v. Laurel County*, 636 F.3d 218, 223-24 (6th Cir. 2011); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002). Others are more lenient (particularly in the case of a transfer from a county facility to a state facility), concluding that such a transfer may render administrative remedies at the transferor facility unavailable. *See Rodriguez v. Westchester County Jail Correctional Dep't*, 372 F.3d 485, 488 (2d Cir. 2004); *Bradley v. Washington*, 441 F. Supp. 2d 97, 102-03 (D.D.C. 2006).

Plaintiff attached to his response two letters, dated May 8, 2012, and May 10, 2012, that he sent to Cook County Jail officials seeking information about his prior filed grievances, and about how to proceed with a grievance about Defendant Yu's failure to treat his broken nose on April 19, 2012, one day prior to his transfer to state custody. Whether Plaintiff's transfer itself

13

rendered the grievance process unavailable to Plaintiff, or not, he has provided evidence that he attempted to follow complete the grievance process with regard to Dr. Yu's medical treatment and was ignored.

Plaintiff must exhaust only those administrative remedies that are available to him. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *citing* 42 U.S.C. § 1997e(a); *Johnson v. Litscher*, 260 F.3d 826, 829 (7th Cir. 2001). In *Lewis* The Seventh Circuit joined multiple other circuits in holding that unavailable remedies need not be pursued "because we refuse to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" *Lewis*, 300 F.3d at 833; *citing Goodman v. Carter,* 2001 U.S. Dist. LEXIS 9213, No. 2000 C 948, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001). Because the record contains evidence that Plaintiff attempted to complete the grievance process after being transferred to state custody and was ignored, the Court finds that questions of fact remain, and Defendant Yu's motion seeking summary judgment because Plaintiff failed to exhaust administrative remedies prior to filing suit must be denied.

**B.     Plaintiff has Failed to Establish Deliberate Indifference**

However, with respect to Defendant Yu's argument regarding deliberate indifference, he is more successful. Pretrial detainees have a right to adequate medical treatment under the Fourteenth Amendment. *See Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). Claims of deliberate indifference to a serious medical need of a pretrial detainee under the Fourteenth Amendment uses the same standard for deliberate indifference to a serious medical need under the Eighth Amendment. *Id.* A claim of deliberate indifference includes both an objective and subjective element. *See Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). As to

medical care, "the objective element requires that the inmate's medical need be sufficiently serious" to implicate the Constitution. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). In this case, Defendant Yu concedes Plaintiff had an objectively serious medical condition. *See* Defendant's reply, at p. 3.

The subjective element requires that the prison official act with sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). Medical negligence is insufficient to demonstrate deliberate indifference. *See Foelker v. Outagamie County*, 394 F.3d 510, 13 (7th Cir. 2005). However, a prisoner does not need to prove that the prison official "intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Instead, it is sufficient if the prisoner demonstrates that the prison official actually knew of a substantial risk of harm to the prisoner and acted or failed to act in disregard to that risk. *See Walker*, 293 F.3d at 1037. An inmate can demonstrate that a prison official knew of a substantial risk of harm if the fact of that risk is obvious. *See Walker*, 293 F.3d at 1037. The court examines the totality of the medical care provided and isolated incidents of delay do not rise to the level of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez*, 111 F.3d at 1374-75.

The record indicates that Plaintiff saw Defendant Yu on two occasions while incarcerated at the Cook County Jail, first on March 22, 2012, and again on April 20, 2012. On March 22, 2012, the evidence shows that Defendant Yu diagnosed Plaintiff with chronic back pain from a gunshot wound to his spine in 2001, referred Plaintiff to neurosurgery, made a referral to primary care, ordered Plaintiff to continue present management and discontinued acetaminophen. Defendant noted that Plaintiff appeared in no apparent distress, ambulated

slowly with a cane, had a well-healed scar to the left lumbar paravertebral, and had limited range of motion secondary to pain.

With respect to Plaintiff's previously prescribed medications, Dr. Yu attempted to contact Plaintiff's primary care physician outside the jail, Dr. Chantal Tinfang, regarding new prescriptions, however, the phone number he had was invalid. The evidence indicates that in February and March of 2012, Plaintiff was given pain medication and other prescriptions, including Naproxin, Albuterol. Gabapentin, and acetaminophen.

On April 19, 2012, Defendant Yu treated Plaintiff for the second and final time. Plaintiff saw Dr. Yu in the emergency room after Plaintiff was in a fight in Division 6 of the Jail, suffering a broken nose. Plaintiff also reported on that date that after the fight he suffered a seizure. When Plaintiff arrived at the emergency room, his blood sugar was tested and he was given oranges and sandwiches. Dr. Yu examined Plaintiff and gave him a referral for primary care, dated April 23, 2012, gave him a cold compress to be applied to his broken nose, and scheduled him for an x-ray. During the examination, Plaintiff informed Defendant Yu that he was scheduled to be transferred to state custody the next morning.

The Court finds that based on the evidence in the record, no reasonable jury could conclude that Dr. Yu was deliberately indifferent to Plaintiff's serious medical condition. To the extent that Plaintiff's medical deliberate indifference claim rests on a "delay" in treatment, his claim fails. The court examines the totality of the medical care provided and isolated incidents of delay do not rise to the level of deliberate indifference. *See Walker*, 233 F.3d at 501; *Gutierrez*, 111 F.3d at 1374-75. Additionally, a disagreement about the proper course of treatment alone is sufficient to show deliberate indifference. *See Chambers v. Mitcheff*, 2013 U.S. App. LEXIS 370

*14 (7th Cir. January 7, 2013) (unpublished); citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010); *Norfleet*, 439 F.3d at 396. Because the totality of care provided to Plaintiff by Defendant Yu and others while he was incarcerated at the Cook County Jail refutes any notion that the care Plaintiff received was "repugnant to the conscience of mankind," (*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), his claim for deliberate indifference fails and the Court grants judgment to Defendant Yu.

If Plaintiff wishes to appeal this final order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, he may also be assessed a "strike" under 28 U.S.C. § 1915(g). Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. Id.

### Conclusion

For the reasons given, Defendant Yu's motion for summary judgment [Doc #53] is granted. The Clerk is directed to enter judgment in favor of Defendant Yu pursuant to Fed. R. Civ. P. 56. The case is terminated.

Date: 9-2-14

Charles R. Norgle, Sr.
United States District Judge